***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell, and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission hereby reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law which were entered into by the parties at the hearing as:
 STIPULATIONS
1. On September 22, 2000, the date of the injury by accident giving rise hereto, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On said occasion, the employee-employer relationship existed between the plaintiff and the defendant-employer.
3. On said occasion, the defendant-employer was insured by Zurich North American Insurance Company.
4. The plaintiff's average weekly wage at the time of her injury by accident was $420.75, yielding a compensation rate of $280.52. The plaintiff has been paid a compensation rate at $277.57.
5. On September 22, 2000, the plaintiff sustained an injury by accident to her back arising out of and in the course of her employment. As a result of her physical restrictions on February 16, 2001, the defendant-employer advised her that it had no work available within her restrictions.
6. The parties stipulate into evidence as Stipulated Exhibit #1, a notebook containing the Pre-trial Agreement as modified and initialed by the parties and also Industrial Commission forms and orders, and medical records.
7. The parties stipulate into evidence as Stipulated Exhibit # 2, pre-injury payroll records, four letters, and the plaintiff's job logs.
 *********** RULINGS ON EVIDENTIARY MATTERS
All objections raised during the depositions of Dr. Werner C. Brooks and Dr. Michael James Goebel have been ruled upon in accordance with applicable law and the Rules of Evidence.
 ***********
Based upon all the competent evidence of record, and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The plaintiff was 39 years of age at the time of the hearing before the Deputy Commissioner. She completed high school by taking special education classes. Prior to her employment with the defendant-employer, the plaintiff had worked as a machine operator, clothing store clerk, motel housekeeper, and custodian.
2. Although the plaintiff could not recall the exact date she began working with the defendant-employer, she remembered it was in the year 2000 when the weather was warm. She began her employment with the defendant-employer as a housekeeper, but had been promoted to housekeeping supervisor at the time of her injury on September 22, 2000. The plaintiff sustained an admittedly compensable injury by accident on September 22, 2000, when she slipped and fell while cleaning mold around a Jacuzzi bathtub at a motel owned by the employer.
3. The defendants admitted the plaintiff's right to compensation with a Form 60 dated May 17, 2001, indicating that the plaintiff became disabled on October 2, 2000. The Form 60 reflected an average weekly wage of $416.33 and a compensation rate of $277.57. At the hearing, the parties stipulated that the plaintiff's correct average weekly wage was $420.75, yielding a compensation rate of $280.51.
4. The plaintiff testified that prior to her injury, she had no physical limitations of any type. Following her injury, she saw Dr. Lange, who referred her to Dr. Brooks, an orthopedic surgeon. Dr. Brooks limits his orthopedic practice to the large joints (i.e., knees, shoulders, and hips), however, ten to fifteen percent of his practice was treating back problems.
5. The plaintiff presented to Dr. Brooks on October 3, 2000, with complaints of severe low back pain. Dr. Brooks diagnosed plaintiff with a low back strain, and kept the plaintiff out of work for a few days, returning her to sit down duties only. Eventually, Dr. Brooks learned that the defendant-employer was not complying with the plaintiff's restrictions imposed by him, so on November 1, 2000, Dr. Brooks took the plaintiff out of work for a month. Because the plaintiff's condition failed to improve, Dr. Brooks continued to write the plaintiff out of work through February 17, 2001, and continuing.
6. At Dr. Brooks request, his partner, Dr. Michael Goebel, evaluated the plaintiff on March 12, 2001. Upon examination, the plaintiff was found to have tenderness within the myofascial tissues of her spine. Dr. Goebel diagnosed the plaintiff with myofascial pain syndrome and degenerative disc disease at L3-4. Dr. Goebel ordered a functional capacity exam (FCE), which indicated that plaintiff was capable of sedentary work for an eight hour day. Based upon Dr. Goebel's diagnosis and the results of the FCE, Dr. Brooks returned plaintiff to work at sedentary duties on May 10, 2001.
7. In July 2001, Dr. Brooks continued the plaintiff with the modified sit sown only duties for several more months. While the diagnostic tests performed through that time were negative, Dr. Brooks agreed that the mechanical or neurological reasons for the plaintiff's pain were not always shown in her MRI's.
8. Dr. Brooks continued the plaintiff on sit down only duties through September 2001, at which point he believed that she had reached maximum medical improvement. At that time, Dr. Brooks did not believe that the plaintiff's inability to work had changed, and that if she did attempt housekeeping work, she would risk further injury.
9. Dr. Brooks gave the plaintiff a five percent (5%) permanent partial disability rating to her back, and provided her with permanent restrictions to avoid lifting from floor level, and lifting no more than 10 pounds occasionally or five pounds repetitively.
10. The plaintiff returned to Dr. Goebel in January 2003, at which time the plaintiff complained of low back pain, and right lower extremity pain and numbness. Dr. Goebel found that plaintiff continued to have lumbar strain, but found her to be capable of light-duty work with a lifting restriction of 30 pounds.
11. The plaintiff next and last saw Dr. Goebel on March 25, 2003; however, his opinion at that time regarding the plaintiff's condition at that time was inconsistent from his prior opinion. Dr. Goebel returned the plaintiff to work without any restrictions and assigned her a one percent (1%) permanent partial disability rating to her back. Dr. Goebel was unable to explain what, if anything, had changed about the plaintiff's condition.
12. During his deposition, Dr. Brooks was of the opinion that the plaintiff continued to be at a high risk of re-injury and, thus, should not return to housekeeping. He believed the plaintiff's complaints of pain were consistent with the injury mechanism that she described and that, throughout the period in which he treated her, the plaintiff was consistent in her complaints. As of the date of his deposition, Dr. Brooks could not envision a time within the near future in which he could return the plaintiff to work with no physical restrictions and, thus, was not in agreement with Dr. Goebel regarding the issue of plaintiff's continuing disability.
13. In considering the totality of the evidence of record, the Full Commission assigns greater weight to the opinions of Dr. Brooks, the plaintiff's primary treating physician, as opposed to Dr. Goebel regarding the issue of the plaintiff's ability to return to work, her work restrictions, and the degree of her permanent partial disability. Dr. Goebel's change in opinion is not supported by the evidence of record. Thus, based upon the evidence of record, including the testimony of the plaintiff's treating physician, the Full Commission finds that the plaintiff retained disability and physical restrictions after March 25, 2003, and continuing, as a result of her injury by accident.
14. The plaintiff testified that she received a letter from the defendant-employer dated February 16, 2001, which terminated her employment. Subsequent to her receipt of the termination letter, the defendants assigned vocational rehabilitation specialist Joseph Cobble. In conjunction with the vocational rehabilitation efforts of Mr. Cobble, the plaintiff applied to well over one hundred jobs in her local area; however, she was unable to secure employment. Her unsuccessful ob search is documented in a job log prepared by the plaintiff. The plaintiff has shown that, after a reasonable effort, she has been unsuccessful in her effort to obtain employment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of her employment with the employer on September 22, 2000. N.C. Gen. Stat. § 97-2(6). The employer admitted plaintiff's right to compensation with a Form 60. A Form 60 does not create a presumption of continuing disability. Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277, 280, disc. review denied, 353 N.C. 729,550 S.E.2d 782 (2001). A release to return to work without restrictions rebuts any presumption of continuing disability. Harrington v.Adams-Robinson Enterprises, 349 N.C. 218, 504 S.E.2d 786 (1998); In ReStone v. G G Builders, 346 N.C. 154, 484 S.E.2d 365 (1997). The evidence in the present case conclusively established that the plaintiff was assigned permanent work restrictions by her primary treating physician.
2. A claimant may prove disability through the production of evidence that the claimant is capable of obtaining some employment but, after a reasonable effort, has been unable to obtain employment. Russell v. LowesProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). In the present case, the plaintiff has shown that after a reasonable effort, she has been unable to obtain employment and, thus, continues to be disabled pursuant to the Workers' Compensation Act. Id.
3. As a result of her injury by accident and resulting back conditions, the plaintiff is entitled to receive temporary total disability compensation at the weekly rate of $277.57 from October 2, 2000, the date she was first taken out of work by Dr. Brooks, and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
4. As a result of her injury by accident, the plaintiff has sustained a five percent (5%) permanent partial impairment to her back. N.C. Gen. Stat. § 97-31. However, the plaintiff is entitled to an election of the greater remedy, and is deemed to have elected to receive temporary total disability compensation pursuant to N.C. Gen. Stat. § 97-29, in lieu of an award pursuant to N.C. Gen. Stat. § 97-31.
5. The plaintiff is entitled to medical treatment that was reasonably necessary to effect a cure, give relief, or lessen the period of her disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. The defendants' Form 24 application to terminate payment of temporary total disability benefits is hereby DENIED.
2. The defendant shall pay to the plaintiff temporary total disability benefits at the rate of $277.57 per week beginning October 2, 2000, and continuing until further order of the Commission, subject to the attorney's fee approved herein. The portion of such compensation that has accrued shall be paid to the plaintiff in a lump sum.
3. The defendants shall provide for all related medical compensation that was or is reasonably necessary to effect a cure, give relief, or lessen the period of the plaintiff's disability.
4. The defendants shall pay directly to the plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded herein. The portion of this fee that has accrued shall be paid to the plaintiff's counsel in a lump sum; thereafter, the plaintiff's counsel shall receive every fourth check of disability compensation owed to the plaintiff.
5. The defendants shall pay the costs.
This 5th day of October 2005.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/____________ BUCK LATTIMORE CHAIRMAN